IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CURTIS RUECKER,

|                        |                        |
|------------------------|------------------------|
| Plaintiff,             | CV-07-0089-ST          |
| v.                     | OPINION AND ORDER      |

ANDY SOMMER; PETER MCDOUGAL;
WILSONVILLE HIGH SCHOOL, a public high
school in the State of Oregon; and WEST LINN-
WILSONVILLE OREGON SCHOOL DISTRICT
3J, a public school district in the State of Oregon,

                    Defendants.

STEWART, Magistrate Judge:

### **INTRODUCTION**

Plaintiff, Curtis Ruecker ("Ruecker"), alleges various violations of his constitutional,

statutory and common law rights committed by defendants over the course of his high school

education.  Pursuant to 42 USC § 1983, he alleges violations of the Due Process Clause resulting

in a denial of his property ("Claim One") and liberty ("Claim Two") interests, and a violation of

the Equal Protection Clause ("Claim Three").  He also alleges a claim for discrimination and

retaliation in violation of § 504 of the Rehabilitation Act of 1973, 29 USC §§ 701-796l ("§ 504")

("Claim Four").  Ruecker requests declaratory and injunctive relief requiring defendants to:

(1) alter their policies and procedures to conform with the Rehabilitation Act and the Individuals

with Disabilities Act, 20 USC §§ 1400-1487 ("IDEA"); (2) establish mandatory training on

implementation of individual educational plans ("IEPs"); (3) modify their record-keeping to

ensure that an IEP follows a student throughout each grade until it is revoked or the student

graduates; (4) modify Ruecker's affected courses and grades pursuant to an agreement; and

(5) not to subsequently modify Ruecker's grades.  He also seeks economic damages in an

unspecified amount for loss of educational opportunities and reputation, $500,000 in

compensatory damages, attorney fees and costs incurred during the administrative process, and

punitive damages of $150,000 each against of the individual defendants.

Defendants have moved for summary judgment on all claims pursuant to FRCP 56(b)

(docket #27) based on a lack of subject matter jurisdiction for failure to exhaust administrative

remedies, the provision of adequate due process, the unavailability of a "class of one" equal

protection theory, and lack of evidence of discrimination or retaliation under § 504.[1]  Finally,

they contend that the individual defendants are protected by qualified immunity and cannot be

sued in their individual capacity.[2]

---

[1]  Both parties agree that Wilsonville High School is not a proper defendant.

[2]  To the extent Ruecker alleges claims against the individual defendants in their official, as opposed to their individual capacity, the real party in interest is the District.

All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).  For the reasons that follow, defendants' motion is granted based on a lack of subject matter jurisdiction.

## STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law."  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987).  The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party."  *Id* (citation omitted).

///

///

///

## BACKGROUND

### I.    Factual History

As a child, Ruecker was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), a disability recognized by § 504.  C. Ruecker Depo., p. 25.   Due to his disability, Ruecker was first put on a § 504 plan in 1999 while in elementary school.  A. Ruecker Depo., p. 11.  He remained on a § 504 plan through middle school.  R. Ruecker Depo., pp. 21-22.

In 2002, Ruecker enrolled at Wilsonville High School in the West Linn-Wilsonville Oregon School District 3J ("District").  During his freshman year (2002-03) he was suspended by defendant Peter McDougal ("McDougal"), Assistant Principal of Wilsonville High School, for obtaining access to the school database and altering his records.  C. Ruecker Depo., pp. 35-36; R. Ruecker Depo., pp. 26-27; McDougal Decl., ¶ 2.  Ruecker and his father signed a behavior referral in which Ruecker admitted that he had changed his school records by removing all tardies and unexcused absences and altering some of his grades.  Vickers Decl. Ex. B (C. Ruecker Depo., Ex. 2).  Ruecker now denies that he altered his grades.  C. Ruecker Depo., pp. 35-37.

During his junior year at Wilsonville High School (2004-05), Ruecker was enrolled in a 0-period class where he worked with the school's IT staff members.  *Id*, pp. 57-61; Sommer Decl., ¶ 2.  On January 7, 2005, Jim O'Connell, Ruecker's chemistry teacher ("O'Connell"), emailed Ruecker's mother that Ruecker was not consistently turning in assignments.  Ruecker Depo., pp. 65-66 & Ex. 5.  On or around January 13, 2005, O'Connell notified McDougal of a discrepancy in his electronic grade book with respect to Ruecker's grade.  McDougal Decl., ¶ 3; McDougal Depo., pp. 40-41.  At the direction of defendant Andy Sommer, Principal of

Wilsonville High School ("Sommer"), McDougal checked with Ruecker's other five teachers that semester.  Two reported that assignments had been added electronically.  Both of those teachers maintained hard-copy grade books in addition to the electronic versions and were able to determine that the electronic versions had been altered.  McDougal Decl., ¶¶ 4-5.

Sommer believes, but Ruecker denies, that Ruecker's involvement in the 0-period class gave him access to the teachers' electronic grade books due his access to the school master key and computer knowledge.  Sommer Decl., ¶ 2; C. Ruecker Depo., pp. 58-64; 128-29.  According to the teacher of the 0-period class, Ruecker was not given any of the special passwords required to access the grade books, but on occasion she gave Ruecker her master key to enter rooms to work on computers.  Gressinger Depo., pp., 19-24; Guay Depo., pp. 33-35; Hummelt Depo., pp. 24-25; O'Connell Depo., pp. 47-51.

During the course of the 2003 investigation into similar allegations, Mr. Ruecker had instructed Sommer that he wanted to be contacted directly should anything similar occur in the future.  Sommer Decl., ¶ 6.  Accordingly, on Thursday, January 20, 2005, Sommer called the Ruecker residence and left a message for Ruecker's father who was traveling.  C. Ruecker Depo., p. 69.  When Mr. Ruecker returned the call, Sommer explained what had developed during the investigation into the discrepancies in Ruecker's grades.  Sommer Decl., ¶ 6; Sommer Depo., pp. 110-12; R. Ruecker Depo., pp. 37-38; R. Ruecker Decl., ¶¶ 5-6.  Mr. Ruecker told Sommer he did not want school administrators speaking to Ruecker without his parents present.

R. Ruecker Depo., p. 38.  Mr. Ruecker and Sommer agreed to meet on Sunday, January 23, 2005.  *Id* at 40; Sommer Decl., ¶ 6.

Sommer suspended Ruecker starting Friday, January 21, 2005. Sommer Decl., ¶ 7; R. Ruecker Decl., ¶ 6. Mr. Ruecker advised his son not to go to school on Friday, January 21, 2005. After returning home, Mr. Ruecker explained to his son that the school believed he had altered his grades again. C. Ruecker Depo., pp. 71-72, 74; R. Ruecker Depo., p. 41. The school had not yet advised Ruecker of the reason for his suspension or given him an opportunity to provide an explanation for the discrepancies in his grades. C. Ruecker Decl., ¶ 3.

On Sunday, January 23, 2005, Sommer showed Mr. Ruecker the documentary evidence collected during the investigation. He then outlined the District's proposal to return Ruecker to school with conditions immediately after an expulsion hearing with Dr. Roger Woehl ("Dr. Woehl"), the District's Superintendent. R. Ruecker Depo., pp. 44-48; R. Ruecker Decl., ¶ 9; Sommer Depo., pp. 119-121.

The following Tuesday, at Mr. Ruecker's request, a meeting with Sommer and Dr. Woehl was scheduled for January 27, 2005. R. Ruecker Decl., ¶ 13; R. Ruecker Depo., pp. 53-54; Sommer Decl., ¶ 9. According to Sommer, this was to be the expulsion hearing discussed at the January 23 meeting. Sommer Decl., ¶¶ 9-11. However, Ruecker and his father maintain that they had no notice that Sommer and Dr. Woehl considered this meeting to be an expulsion hearing. C. Ruecker Decl., ¶ 6; R. Ruecker Decl., ¶ 14; R. Ruecker Depo., pp. 84-85. Rather, they understood that it would be a fact-finding meeting to discuss the charges and review the results of a polygraph test Ruecker had taken in an effort to clear his name. C. Ruecker Decl., ¶¶ 5-6; R. Ruecker Decl., ¶¶ 13-14; R. Ruecker Depo., pp. 56-64; A. Ruecker Depo., p. 43.

At the meeting on January 27, 2005, Dr. Woehl informed the Rueckers that the meeting was an expulsion hearing. C. Ruecker Depo., p. 83. Ruecker denied any wrongdoing and

presented the results of the polygraph examination which seemed to support his position.

C. Ruecker Depo., p. 83; R. Ruecker Depo., p. 65.  Mr. Ruecker then directed his son to leave for

the remainder of the meeting.  R. Ruecker Depo., p. 65.  The parties then discussed the reasons

for Ruecker's suspension, and the District agreed to conduct further investigation.  C. Ruecker

Depo., p. 87; R. Ruecker Depo., p. 70; A. Ruecker Depo., p. 43; Sommer Decl., ¶ 10.  Sommer

informed Ruecker that he would remain suspended pending the outcome of the investigation.

Sommer Decl., ¶ 10; C. Ruecker Decl., ¶ 7; R. Ruecker Decl., ¶ 15.

      According to the District, additional investigation revealed that out of approximately 900

students, Ruecker was the only one with electronic changes to his grades, that these changes

were only in three classes, and that these classes were the ones in which he was doing poorly.

McDougal Decl., ¶ 7.  The Rueckers maintain that the District never provided them with the

results of this investigation.  R. Ruecker Depo., p. 70.

      Shortly after the January 27, 2005, meeting, Ruecker hired legal counsel who negotiated

his return to school with conditions on or about February 17, 2005.  R. Ruecker Depo. p. 83;

C. Ruecker Depo., pp. 87-91; Sommer Decl., ¶ 10.  As a result, Ruecker missed 17 days of

school.  R. Ruecker Depo., pp. 83-84.  Neither McDougal nor Dr. Woehl can recall any other

student being suspended for that long.  McDougal Depo., p. 61; Woehl Depo., pp. 25-26.

      During his suspension, Ruecker was not provided an alternative education setting.

R. Ruecker Decl., ¶ 17.  Ruecker also never received a notice of a change in placement or a

notice of the procedural safeguards provided under the IDEA and § 504.  R. Ruecker Decl., ¶ 18;

C. Ruecker Decl.,    ¶¶ 9-10.

///

II.    **Administrative History**

On July 19, 2005, Ruecker filed a § 504 complaint with the Oregon Department of Education challenging his suspension, alleging several violations under § 504 and seeking relief including credit for certain classes, an opportunity to earn a better grade in others, implementation of a new § 504 plan and attorney fees. R. Ruecker Depo., Ex. 14. This complaint eventually lead to a formal grievance procedure with the District which included several levels of grievance hearings and informal negotiations. R. Ruecker Decl., Ex. 4.

On November 1, 2005, a step two grievance hearing was held. R. Ruecker Decl., Ex. 4, pp. 15-16.[3] The Hearing Officer issued a decision finding that the parties did not agree on the events surrounding Ruecker's access to school computers and the extent to which the District was implementing his § 504 plan. He ordered that the parties should review and revise Ruecker's § 504 plan, the District should assign a case manager to monitor implementation of the plan, and the District should give Ruecker an opportunity to recover credits lost due to failing grades during the second semester of the 2004-05 school year.

On November 9, 2005, the Rueckers appealed the Hearing Officer's decision to step three of the District's grievance procedure. *Id*, Ex. 4, pp. 17-18. While they agreed with the Hearing Officer's order, they did not agree with the District's request to "agree to disagree on the history and legality of the case." They also requested "further clarification regarding the assessment of [Ruecker] and timeframe of the assessment and credit recovery" and "recovery of their attorney fees."

---

[3] Nothing in the record indicates what occurred after July 19, 2005, and before the step two grievance hearing on November 1, 2005.

A series of emails and other correspondence between the Rueckers and school officials between January and April 2006 shows that the parties began to implement, at least in part, the order of the step two Hearing Officer. *Id*., Ex. 4, pp. 19-26. They agreed to a new § 504 plan in January 2006 and the school created a credit recovery program permitting Ruecker to earn passing grades in three classes (computer, Vietnam history, and Trigonometry) for which he had received no credit during the 2004-05 school year.

Despite these efforts, the parties' dispute continued. On March 28, 2006, in response to a February 16, 2006, settlement offer proposed by the Rueckers, the District's attorney wrote to Ruecker's attorney that "the District . . . has worked collaboratively to address the concerns raised in the tort claims notice, the OCR complaint and the District appeal process, rendering the alleged damages and requested remedies in those proceedings moot." *Id*, ¶ 22 & Ex. 2; C. Ruecker Decl., ¶ 13. The letter outlined the various steps taken by the District which it believed fully remedied Ruecker's complaint and stated that "even assuming you proceeded with your OCR complaint or the Step 3 appeal, the District would move to dismiss these claims as many of the issues and remedies raised have been addressed by the District." R. Ruecker Decl., Ex. 2, p. 2. The letter also stated that the District would move to dismiss any legal claims filed at that point on the grounds that the Rueckers had failed to exhaust their claims through the administrative process. *Id*.

On May 9, 2006, the Rueckers' attorney requested a due process hearing. R. Ruecker Decl., Ex. 4, p. 9.; Vickers Decl., Ex. A. The request stated that the primary issue still outstanding was the recovery of school credit and urged the case to be heard as soon as possible because Ruecker was scheduled to graduate. It also indicated that the step three grievance

hearing was scheduled to occur soon, but the family was concerned about the impartiality of the Hearing Officer.

On May 15, 2006, the District held a step three grievance hearing.  R. Ruecker Decl., Ex. 4, pp. 29-31.  The Rueckers declined to participate on the grounds that the Hearing Officer would be biased as she had formerly worked for the law firm representing the District.  *Id* at 29. Thus, the decision was based upon the documents filed by the parties including the step two decision, a letter from each party, and the District's memorandum.  Her decision addresses the primary areas of contention, including whether a manifestation determination was held; whether Ruecker's procedural rights were violated with regard to his suspension and the alleged January 27, 2005, expulsion hearing; whether Ruecker was denied educational benefits; whether an adequate § 504 plan was ever developed and implemented; and whether the District had adequate § 504 grievance procedures.

The  Hearing Officer concluded that:  (1) the evidence suggested that the District's manifestation determination was inadequate; (2) the District failed to follow proper state procedures for notification of an expulsion hearing; (3) the District provided Ruecker with information about recovering credit for his Trigonometry and Vietnam history classes even though it was "not evident that the low grades were related to the disciplinary action in question," offered to provide Ruecker with an after-school tutor to proctor the completion and gave him credit for the computer class; (4) the evidence suggested that a revised § 504 plan was in place and working well; (5) in August 2005 the District had implement written procedures to follow in the case of § 504 disputes; and (6) she had no latitude to draw conclusions regarding monetary

awards.  The Hearing Officer proposed no additional remedies for the identified violations.  *Id* at 31.

That spring, Ruecker graduated with a regular education diploma.

In anticipation of the due process hearing, the parties participated in several pre-hearing conferences and ultimately agreed that the hearing would be held on September 10, 2006. Vickers Decl., Ex. A.  In August 2006, the District reiterated its position that Ruecker's claim was moot and sent the Rueckers, who at that point were unrepresented, a copy of the Motion to Dismiss it intended to submit at the due process hearing.  R. Ruecker Decl., ¶ 24, Ex. 4.  This motion argued that Ruecker's complaint was moot because the District had already offered the substantive remedies he sought and Ruecker had graduated with a regular education diploma.  *Id*; C. Ruecker Decl., ¶ 15.  On September 24, 2006, Ruecker and his father sent an email to the Administrative Law Judge ("ALJ") withdrawing his complaint.  R. Ruecker Decl., ¶ 26; C. Ruecker Decl., ¶ 17; Vickers Decl., Ex. A.  That same day, the ALJ issued a Final Order of Dismissal which included the following notice:

> **NOTICE TO ALL PARTIES**: If you are dissatisfied with this Order, you may, within 90 days after the mailing date on this Order, commence a nonjury civil action in any state court of competent jurisdiction, ORS 343.175, or in the United State Distrrict Court, 20 USC § 1415(e)(2). Failure to request review within the time allowed will result in **LOSS OF YOUR RIGHT TO APPEAL FROM THIS ORDER.**

Vickers Decl., Ex. A.

## III.    Statutory Framework

Ruecker seeks relief under both § 504 of the Rehabilitation Act and § 1983 for actions taken by school officials in the course of providing him an education.  Although he does not allege a claim under the IDEA, "[t]he IDEA requires a plaintiff to exhaust his or her remedies

before commencing suit if that person is 'seeking relief that is also available under' the IDEA."

*Robb v. Bethel Sch. Dist. #403*, 308 F3d 1047, 1049 (9th Cir 2002), quoting 20 USC § 1415(l); *see also*, *Hoeft v. Tucson Unified Sch. Dist.*, 967 F2d 1298, 1302 (9th Cir 1992) ("The IDEA . . . [provides] administrative appeal procedures to be pursued before seeking judicial review). This exhaustion requirement applies to other "Federal laws protecting the rights of children with disabilities," including "title V of the Rehabilitation Act of 1973 [29 USC § 791 *et seq.*]," 20 USC § 1415 (l).[4] Exhaustion is required even though the student is not currently receiving services under the IDEA. *See Babicz v. Sch. Bd. of Broward County*, 135 F3d 1420, 1421-22 (11th Cir 1998) (students on § 504 plans are subject to IDEA exhaustion requirement), *cert denied*, 525 US 816 (1998); *Weber*, 245 F Supp2d at 408-09 (same). Therefore, it is necessary to address the statutory framework formed by the intersection between the IDEA and § 504.

    A.    **IDEA**

        1.    **Generally**

The IDEA, originally enacted in 1970 as the Education for All Handicapped Children Act ("EHA"), provides federal money to state and local educational agencies for providing disabled students with access to a free and appropriate public education ("FAPE"), conditioned on the

---

[4] 20 USC § 1415(l) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 *et seq.*], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 *et seq.*], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

implementation of various substantive and procedural requirements.[5]  The IDEA creates a

statutory and regulatory scheme by which states must identify, evaluate and serve the unique

needs of each handicapped student residing in the state.  Central to the IDEA is the

"individualized education program" ("IEP"), a comprehensive written plan developed by an "IEP

team" consisting of the student's parents, teachers, and representatives of the local educational

agency ("LEA") or school district where the child is receiving educational services.  20 USC

§ 1414(d).  The IEP's ultimate purpose is to tailor the educational services the LEA provides to

the student to meet the special needs created by the student's disability to ensure that the student

receives the benefit of a FAPE.  20 USC §§ 1412 (a), 1414(d).

    Oregon has implemented the substantive and procedural requirements of the IDEA by

statute and through regulations issued by the Oregon Department of Education.  *See* ORS

343.146-.193; OAR 581-015-0005 to 0102 & 581-015-0550 to 0559 (2005).

### 2.    Procedural Safeguards

    Parental involvement is a fundamental component of the operation of the IDEA.  Thus, the

IDEA mandates that a state educational agency ("SEA") or LEA receiving assistance must

establish and maintain a litany of procedural safeguards to ensure the parent is provided the

opportunity to be fully involved in the educational services provided to their child.  20 USC

§ 1415.

---

[5]  Congress amended the IDEA in 1997 through the Individuals with Disabilities Education Act Amendments of 1997, Pub L No 105-17, 111 Stat 37 (June 4, 1997) (effective July 1, 1998), and again in 2005 through the Individuals with Disabilities Education Improvement Act of 2004.  Pub L No 108-446, 118 Stat  2647 (Dec. 3, 2004) (effective July 1, 2005).  For all events surrounding Ruecker's suspension in January and February 2005, the statutes and regulations in effect prior to the effective date of the 2004 amendments govern.  *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F3d 932, 937 n2 (9th Cir 2007).  However, the procedures in effect on July 16, 2005, govern the filing of Ruecker's § 504 complaint on that date.  Since Ruecker did not follow through with his administrative complaint, and no particular procedural change made by the 2004 amendments to the IDEA administrative process is at issue, for the sake of clarity, all references are to the federal and state statutes and regulations in effect prior to the effective date of the 2004 amendments.

The IDEA provides that the LEA must provide a notice of these and other procedural safeguards on multiple occasions. 20 USC § 1415(d)(1). The IDEA explicitly dictates the content of this notice. 20 USC § 1415(d)(2). Also, this notice must be provided upon the same day the LEA's decides to take disciplinary action against a disabled student as discussed below. 20 USC § 1415(k)(4)(A)(i).

### 3.    <u>Administrative Relief</u>

The IDEA requires educational agencies to implement procedures which provide "[a]n opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child[.]" 20 USC § 1415(b)(6). The parent or educational agency begins the process by filing a due process complaint. 20 USC § 1415(b)(6), (b)(7). The party must request an impartial due process hearing within two years of the date the party knew or should have known about the alleged action forming the basis of the complaint. OAR 581-015-0081(3) (2005). The hearing is held before an impartial hearing officer under trial type procedures, and both parties may be represented by counsel. 20 USC §§ 1415(f)(1), (h)(1). The hearing officer may order relief, such as requiring the educational agency to provide services in order to fulfill its obligations to provide a FAPE or to reimburse the parent for the cost of acquiring the necessary services. 20 USC §§ 1401(22), 1412 (a)(10)(C)(ii). However, money damages are not available as relief under the IDEA. *Witte v. Clark County Sch. Dist.*, 197 F3d 1271, 1275 (9th Cir 1999), *cert denied*, 537 US 1190 (2003); *see also Mark H. v. Lemahieu*, 513 F3d 922, 930 (9th Cir 2008) ("[T]he IDEA . . . allows private causes of action only for prospective relief.").

Within 120 days of the date of the hearing officer's final decision, any aggrieved party may file a civil action in state or federal court. 20 USC §§ 1415(g), (i)(2); ORS 343.175(4). Based on "the preponderance of the evidence," the court "shall grant such relief as [it] determines is appropriate." 20 USC § 1415(i)(2)(B)(iii). The court may also award attorney fees to the prevailing party. 20 USC § 1415(i)(3). Attorney fees can include expenses incurred during the administrative process except where specifically excluded by this section. *Id.* Furthermore, a parent who prevails at the administrative level may file an action with the sole purpose of obtaining attorney fees incurred during the process. *Lucht v. Molalla River Sch. Dist.*, 225 F3d 1023, 1026 (9th Cir 2000). However, a parent need not obtain a favorable determination at a due process hearing in order to be considered a prevailing party. A parent who has "reached a favorable settlement prior to a scheduled administrative hearing" also may recover attorney fees. *Kletzelman v. Capistrano Unified Sch. Dist.*, 91 F3d 68, 70 (9th Cir 1996) (citations omitted).

## 4. <u>Discipline of Disabled Students</u>

The IDEA does not eliminate a school's ability to discipline disabled students for misbehavior. 20 USC § 1415(k)(1). It does, however, provide certain procedural protections and proscribe the discipline that can be meted out where the offending behavior is determined to be a manifestation of a student's disability. 20 USC § 1415(k)(4)-(6). School personnel may suspend a disabled child or effect other changes in placement by following the same discipline procedures as would be applied to children without disabilities. 20 USC §1415(k)(1)(A)(i). On the same day the decision is made, the LEA must notify the parents of its decision to take disciplinary action against a disabled student and of all the procedural safeguards. 20 USC § 1415(k)(4)(A)(i).

If the school intends to suspend the student longer than 10 school days, then within 10 days of the suspension, it must hold a manifestation determination. 20 USC §§ 1415(k)(1)(B), (k)(4)(A)(ii). At that determination, the LEA, parent, and relevant members of the IEP team must determine whether the behavior was a manifestation of the child's disability. 20 USC § 1415(k)(4)©. If not, then the school may continue the suspension beyond 10 days by following the same procedures as would apply to children without disabilities as long as the school continues to provide a FAPE to the child. 20 USC §§ 1415(k)(5)(A), 1412(a)(1).

If the child's parents disagree with any decision regarding the placement or manifestation determination, they may appeal the decision by requesting an expedited due process hearing following the procedures established in 20 USC § 1415(f) and other procedures as established by state law. 20 USC § 1415(k)(6); 34 CFR § 300.525 (2005). This appeal is held before a hearing officer who has the authority to review whether the child's behavior was a manifestation of his or her disability and to make other decisions about the child's placement. 20 USC § 1415(k)(6)(B)(i).

In addition to these protections, the IDEA states that a "change in placement" occurs if a removal is more than 10 days or if multiple removals add up to more than 10 days and constitute a pattern because of factors such as the length of each removal, proximity in time, and the total amount of time a student is removed. 34 CFR § 300.519 (2005). As discussed above, this triggers the parents' right to prior written notice of this change. 20 USC § 1415(b)(3)(A). An aggrieved parent may file a complaint, engage in a due process hearing, and, ultimately bring suit in state or federal court. 20 USC §§ 1415(b)(6), (f), & (i)(2).

**B.** **§ 504**

Under § 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 USC § 794(a).  That section applies to all public schools that receive federal funds.  29 USC § 794(b)(2)(B).  Its protections for disabled students, although not coterminous with the protections afforded by the IDEA, nevertheless operate in tandem in the special education context.  *See Weber v. Cranston Pub. Sch. Comm.*, 245 F Supp2d 401, 406 (D RI 2003) ("[§504] is a bludgeon to the IDEA's stiletto, protecting a broader swath of the population without describing a precise manner of compliance.").

Although the language of § 504 does not mandate a FAPE, its implementing regulations do.  34 CFR § 104.33(a).  The definition of a FAPE under § 504 "varies slightly from the IDEA's definition of FAPE."  *Weber*, 245 F Supp2d at 407.  The regulations also impose very similar requirements with respect to the identification, evaluation and placement of disabled students.  34 USC §§ 104.32 -.35.  Additionally, the regulations require the recipients of federal funding that operate public schools to establish and implement

> a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure.  *Compliance with the procedural safeguards of section 615 of the [IDEA] is one means of meeting this requirement.*

34 CFR § 104.36 (emphasis added).

Oregon has implemented the procedural safeguards required by § 504.  *See* OAR 581-015-0108 to 0109 (2005).  These procedures entitle a "parent or guardian of a qualified student with a

disability under § 504 [to] file a written request for a hearing with the State Superintendent of

Public Instruction with respect to actions regarding the identification, evaluation, provision of a

free appropriate education, or education placement of the student with the disability under Section

504." OAR 581-015-0109(1). The regulations largely incorporate the due process hearing

procedures afforded to complaints under the IDEA. OAR 581-015-0109(3) (incorporating

procedures under OAR 581-015-0080).

Despite the procedural protections offered by these regulations, § 504 does not have its

own independent exhaustion requirement. *See Smith v. Barton*, 914 F2d 1330, 1338 (9th Cir

1990) ("[P]rivate plaintiffs suing under section 504 need not first exhaust administrative

remedies.") (citation omitted). Rather it "establishes an implied private right of action allowing

victims of prohibited discrimination, exclusion, or denial of benefits to seek 'the full panoply of

remedies, including equitable relief and [compensatory damages],'" but excluding punitive

damages. *Mark H.*, 513 F3d at 930, quoting *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812

F2d 1103, 1107 (9th Cir 1987) (brackets in original).

## RUECKER'S CLAIMS

Ruecker's First Claim alleges that defendants violated § 1983 by depriving him of his

property interest in his education without affording him appropriate due process of law as

guaranteed by the Fourteenth Amendment. The acts which allegedly caused this violation

include: (a) failing to provide him with a FAPE pursuant to the IDEA and § 504; (b) suspending

him for longer than permitted by Oregon law; (c) failing to provide him with a tutor during his

suspension in violation of the IDEA, § 504 and Oregon law; and (d) failing to amend his grades

which were adversely affected due to his wrongful suspension.

Ruecker's Second Claim also alleges a violation of § 1983 by depriving him of his liberty interest in his high school transcript and reputation without due process of law as protected by the Fourteenth Amendment.  The acts which allegedly caused this violation include: (a) suspending him from school for longer than permitted by Oregon law; (b) accusing him of dishonorable conduct and failing to permit him the opportunity to present evidence of his innocence; and ©) informing staff and teachers of the allegations against him, thereby tarnishing his reputation.

The Third Claim alleges that defendants violated § 1983 by intentionally treating him less favorably than similarly situated individuals, thus denying him equal protection under the law in violation of the Fourteenth Amendment.  This discrimination consisted of "selective punishment" by suspending Ruecker for "almost a month" which was allegedly motivated by a discriminatory, retaliatory, arbitrary or capricious reason not related to any legitimate governmental purpose.

Finally, Ruecker's Fourth Claim alleges discrimination and retaliation in violation of § 504.  The alleged discriminatory acts include defendants failing to:  (a) comply with the § 504 plan; (b) implement his § 504 plan; (c) follow § 504 procedures when suspending him; and (d) provide him with educational support pursuant to § 504 while suspended.  He also alleges the District retaliated against him when he and his parents attempted to enforce his § 504 plan.

Ruecker seeks four basic types of relief for these violations:  (1) a declaration that defendants violated his rights under § 504; (2) prospective systemic injunctive relief requiring defendants to institute certain policies and training; (3) personal injunctive relief requiring defendants to make alterations to his grade and attendance records; and (4) monetary damages, including economic damages for loss of educational opportunities, compensatory damages for damage to reputation, attorney fees and costs incurred during the administrative process, and punitive damages.

///

///

///

## DISCUSSION

## I.    Exhaustion

Defendants first challenge this court's jurisdiction because Ruecker failed to exhaust his administrative claims by abandoning them prior to the completion of the due process hearing scheduled for the fall of 2006.  Ruecker responds that he abandoned the claims because further pursuit of them would have been futile after he graduated from high school.  He also argues that the District failed to provide notice that complete exhaustion of the administrative process was a jurisdictional prerequisite to filing a lawsuit and is estopped from raising his failure to exhaust because it induced him to dismiss his claims.

### A.    IDEA Exhaustion Requirements

The IDEA exhaustion requirement "embodies the notion that educational agencies, not the courts, ought to have primary responsibility for the educational programs that Congress has charged them to administer." *Robb*, 308 F3d at 1051, citing *Hoeft*, 967 F2d at 1303.  The requirement assures that generalist judges "'with no experience in the educational needs of [disabled] students,' are given the benefit of expert fact-finding by a state agency devoted to this very purpose." *Id*, quoting *Hoeft*, 967 F2d at 1303 (brackets in original).  Furthermore, "it promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled students," *id*, and by "further[ing] development of a complete factual record." *Hoeft*, 967 F2d at 1303.  Exhaustion also recognizes the "strong state and local interest" in developing educational systems with room for the "exercise of discretion and educational expertise." *Id*.

The IDEA's exhaustion requirement is not unyielding.  A number of exceptions apply which may excuse an aggrieved student from complying with the administrative process under the IDEA.  These include complaints for which:

> (1) it would be futile to use the due process procedures . . . ;
> (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law;
> (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought) . . .

*Id* at 1303-04 (ellipses in original) (emphasis omitted), quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985).

The Ninth Circuit has also recognized an exception to the exhaustion requirement where the school district "failed to perform its statutory duty to notify [a student's guardians] of the change in a manner that would fully inform them of all available safeguards and avenues of review."  *Doe by Gonzales v. Maher*, 793 F2d 1470, 1490-91 (9th Cir 1986), *judgment aff'd as modified*, *Honig v. Doe*, 484 US 305 (1988).

Whether exhaustion is required is a question of law.  *Hoeft*, 967 F2d at 1303.  "In determining whether these exceptions apply, [the] inquiry is whether pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme."  *Id*.  The party asserting an exception bears the burden of proof on this issue.  *Robb*, 308 F3d at 1050 n2.

Ruecker admits that he failed to fully exhaust the administrative remedies provided by the Oregon Department of Education pursuant to the IDEA.  Therefore, the question presented is whether exhaustion of Ruecker's remedies is excused with respect to any of his pending § 504 or § 1983 claims.

**B.**    <u>Exceptions to Exhaustion</u>

**1.**    <u>Futility</u>

**a.**    <u>Nature of Injuries Sought to be Redressed</u>

Exhaustion of administrative remedies is futile as to any relief sought in court that could not have been obtained through the administrative process.  However, the standard for establishing futility is very high.  If a student's injury "could be redressed 'to any degree' by the IDEA's administrative procedures – or if the IDEA's ability to remedy an injury is unclear –  then exhaustion is required."  *Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F3d 1162, 1168 (9th Cir 2007), quoting *Robb*, 308 F3d at 1050.  The focus is not on the relief the plaintiff actually seeks, but on "the source and nature of the alleged injuries for which he or she seeks a remedy."  *Robb*, 308 F3d at 1050.  "The dispositive question generally is whether the plaintiff has alleged injures that could be redressed to any degree by the IDEA's administrative procedures and remedies."  *Id*.

The court has defined "available" relief to mean "relief suitable to remedy the wrong done the plaintiff, which may not always be relief in the precise form the plaintiff prefers."  *Id* at 1049 (citations omitted).  Also, "[r]elief under the IDEA . . . must be appropriate in light of the primary purpose of the IDEA."  *Blanchard v. Morton Sch. Dist.*, 420 F3d 918, 921 (9th Cir 2005) (citation omitted).  "Relief is available under the IDEA when '[b]oth the genesis and the manifestations of the problem are educational.'"  *Id*, quoting *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.*, 98 F3d 989, 993 (7th Cir 1996) (brackets in original).  However, "the IDEA's administrative remedies cannot compensate for a plaintiff's injuries that are completely non-educational."  *Id* (citation omitted).

Ruecker's claims revolve around the deprivation of a FAPE and defendants' alleged failure to afford him certain procedural protections to which he was entitled while enrolled at Wilsonville

High School.  The injuries alleged and remedies requested in Ruecker's administrative complaint are generally the same as those at issue in this case.

In his administrative complaint, Ruecker grouped his grievances into three categories: (1) violations stemming from his suspension which allegedly violated his rights under § 504 and took place without proper notice or hearing; (2) the District's repeated violations of his rights under § 504 as demonstrated by failing to implement his § 504 plan, failing to provide appropriate accommodations upon his return to school from suspension, and other failures; and (3) the District's lack of grievance procedures for handling § 504 complaints.  As relief for these violations, he sought:  (1) compensatory education (including the provision of a private tutor); (2) an assessment of his learning and review of his grades; (3) an opportunity to show competency to achieve better grades for classes taken during second semester of the 2004-05 school year (after the suspension); (4) passing grades for several classes for which he was denied credit; and (5) attorney fees.

Most of the relief sought by Ruecker in this case clearly was available through the administrative process.  For example, whether the procedural safeguards provided to a particular disabled student by the District complied with § 504 and the IDEA is precisely the type fact-intensive inquiry that the administrative process was designed to address.  Had the ALJ agreed with Ruecker, then the District would have been on notice that its processes violated § 504 and provided an opportunity to conform its procedures to the law, eliminating any need for an injunction. *See Hoeft*, 967 F2d at 1309 (one reason for exhaustion is that "individual administrative determinations would alert the state to local compliance problems and further correction of any problems on a state-local level"), citing *Assoc. for Retarded Citizens v. Teague*, 830 F2d 158, 161-62 (11th Cir 1987).  Indeed, that is what occurred in this case.  Prior to Ruecker's complaint, the

District had no grievance procedure in place for § 504 complaints, but, as noted by the step three Hearing Officer, remedied this problem in August 2005.

Furthermore, a compensatory education was an available administrative remedy and remained a viable option even after Ruecker's graduation. *Frazier v. Fairhaven Sch. Comm.*, 276 F3d 52, 63 (1st Cir 2002) ("*Frazier II*"), citing *Pihl v. Mass. Dep't of Educ.*, 9 F3d 184, 188-89 & n8 (1st Cir 1993).  Additionally, while monetary damages are not available for violations of the IDEA, *Witte*, 197 F3d at 1275, prevailing parties are entitled to recover attorney fees.  Had Ruecker exhausted the administrative process and prevailed on his claims in that forum, he would have been able to file a claim to recover at least some of the attorney fees incurred throughout the administrative process.  20 USC §§ 1415(i)(3)(B)-(G); OAR 581-015-0080(3)(d) (2005).

Moreover, the administrative process provided at least some relief to Ruecker.  The District agreed to provide Ruecker with a new § 504 plan and did so.  It provided a process for Ruecker to alter his grades by completing work and agreed to provide a tutor to help him.  It also offered to expunge one of his poor grades and ultimately permitted him to graduate with a normal diploma. To the extent that Ruecker was displeased with the remedies already provided through the District's grievance process, or believed that the District had failed to implement any agreement to adjust his grades, it would not have been futile for Ruecker to seek further relief in a due process hearing. Even after graduation, the ALJ could have ordered changes to Ruecker's grades and other injunctive relief.  Finally, it is not clear what additional relief this court can grant specifically in regards to his alleged educational injuries over and above those already provided.  This is particularly the case with respect to the systemic injunctive relief which can provide no benefit to Ruecker now.

This case is very similar to that of *Christopher W. v. Portsmouth Sch. Comm.*, 877 F2d 1089, 1097 (1st Cir 1989), where the court found that a student seeking "academic credit for past courses, the expunging from his permanent school record of any references to his suspension, and injunctive relief prohibiting any future disciplinary sanctions against him without the [IDEA's] procedural safeguards" was required to "follow the administrative path."  Rejecting the plaintiff's argument that the available administrative relief was inadequate, the court stated:

> Christopher W. has presented no evidence that the administrative process is not able to grant the relief he seeks.  Indeed, the findings required in this case are precisely the types of issues in which administrative expertise and experience are most valuable.  The state agency is much better equipped than the federal courts to determine issues such as the relationship between Christopher W.'s misbehavior and his handicap, and the amount of work he performed in classes for which he received no credit.  Moreover, the granting of course credit and expunging the suspensions from Christopher W.'s permanent school record is certainly the type of relief within the hearing officer's province.

*Id* at 1098.

Even where the relief sought is not available in the administrative forum, courts have found that exhaustion would not be futile.

> [W]hatever the statutory context, a party must exhaust a mandatory administrative process even if the precise form of relief sought is not available in the administrative venue.  This makes perfect sense: the administrative process, at the very least, should facilitate the development of a useful record (and, thus, assist in the informed disposition of any subsequent litigation).

*Frazier II*,  276 F3d at 62; *see Robb*, 308 F3d at 1050-51.

This reasoning applies here.  Exhaustion would have provided several benefits consistent with the Congressional intent behind the IDEA administrative scheme.  First, it would have tested the District's arguments that it had already given Ruecker all the relief to which he was entitled.  If additional relief remained available, the ALJ could have provided it and given the District the first

opportunity to correct its mistake.  Alternatively, if no additional relief was available under § 504, then the ALJ would have clarified the issues for this court to review.

Second, exhaustion would have provided this court with the benefit of a complete administrative record.  The administrative process "facilitates the compilation of a fully developed record by a factfinder versed in the educational needs of disabled children," and a record is "an invaluable resource for a state or federal court required to adjudicate a subsequent civil action covering the same terrain." *Frazier II*, 276 F3d at 61.  The ALJ could have sorted out the tangled web of procedural and substantive issues involved in this case.  More importantly, a due process hearing would have given a definitive, final answer at the administrative level to the questions Ruecker ultimately asks this court to address, including whether Ruecker's rights were violated pursuant to § 504, whether the meeting on January 27, 2005, was an expulsion hearing or mere factfinding, whether the fully panoply of remedies available through the administrative process under § 504 and IDEA had been exhausted, and whether the District had complied with the various agreements made over the course of the administrative process.  *See id* ("The reliance of courts upon the detailed evidentiary record developed during the due process hearing further underscores the importance of the IDEA's administrative procedures.").

The more difficult issue is presented by Ruecker's 17-day suspension which allegedly violated not only his right to a FAPE under the IDEA and § 504, but also his due process and equal protection rights.  The fact that a disabled student suffers a violation of his rights under the IDEA or § 504 does not necessarily implicate constitutional rights.  The converse is also true:  a student may have his constitutional rights violated, and yet still be receiving a FAPE as defined under the IDEA or § 504.  In the latter case, the administrative processes and remedies created by the IDEA could not properly compensate for the injury suffered.  This court is wary of shutting its doors to a person

who has suffered a violation of  his constitutional rights, but must require students with

constitutional claims to exhaust administrative remedies if they seek relief that also is available

under the IDEA.  The resolution of the futility issue turns on whether the injury and concomitant

remedies are educational in nature, requiring exhaustion.

Three Ninth Circuit cases frame this issue.  First, in *Witte*, the plaintiff was allegedly

subjected to physical and verbal abuse, at times amounting to torture, at the hands of his special

education teachers.  Pursuant to the IEP process, he moved to a new school and received an

educational program appropriate to his needs.  His mother filed suit, alleging claims under § 1983,

§ 504, the ADA and various tort claims under state law and seeking only money damages.  Due to

Witte's failure to exhaust, the district court dismissed for lack of subject matter jurisdiction.  The

Ninth Circuit reversed, holding that exhaustion was not required because Witte "[sought] only

monetary damages, which is not 'relief that is available under' the IDEA, and because all

educational issues already [had] been resolved to the parties' mutual satisfaction through the IEP

process[.]"  *Witte*, 197 F3d at 1275.  Therefore, Witte was "not 'seeking relief that is also available'

under the IDEA." *Id*, quoting 20 USC § 1415(l).

In *Robb,* the plaintiff, without first pursuing administrative remedies, brought a suit under

§ 1983 "predicated on a violation of the [IDEA]" alleging that the defendants violated her rights by

removing her from the classroom for "peer tutoring" by other students on the floor of a dim

hallway.  *Robb*, 308 F3d at 1048.  Robb asked for money damages to compensate her for "'lost

educational opportunities' and 'emotional distress, humiliation, embarrassment and psychological

injury.'"  *Id*.  As in *Witte*, the district court dismissed for lack of subject matter jurisdiction based

on a failure to exhaust.  This time the Ninth Circuit affirmed.  It rejected the argument that a

plaintiff can escape the exhaustion requirement "merely by limiting a prayer for relief to money

damages" or services the IDEA does not provide.  *Id* at 1049.  It found that Robb's damages could be measured in part by the cost of counseling to ameliorate her emotional damages, services the IDEA can require a school district to provide at its own expense.  The court also found that the administrative process would be fruitful rather than futile because the hearing officer could conclude whether these services were necessary or available which would be relevant to future claims under the IDEA or other statutes.  Finally, allowing exhaustion would support the Congressional goal that "educational agencies, not courts, ought to have primary responsibility for educational programs" and promote "judicial efficiency by giving these educational agencies the first opportunity to correct shortcomings."  *Id* at 1051.

Finally, in *Kutasi*, after a protracted dispute over the services to be provided their autistic son, the parents filed a complaint accusing the defendants of engaging in a pattern and practice of retaliatory and discriminatory actions in violation of § 1983 and § 504.  The district court dismissed the claims for failure to exhaust.  The Ninth Circuit affirmed "[b]ecause the Kutasis allege[d] injuries that could be redressed to some degree by the IDEA's administrative procedures and remedies[.]"  *Katusi*, 494 F3d at 1170.  Relief available under the IDEA included injunctive relief mandating that the school district issue periodic reports on the child's progress and hold appropriate meeting times with the parents and monetary reimbursement of withheld therapy expenses.  "[A]lthough such a remedy . . . would not provide the specific form of relief the Kutasis seek – money damages –  it could alleviate the root cause of their injury."  *Id* at 1169.

In both *Robb* and *Kutasi*, the plaintiffs' claims were premised on violations of the educational rights guaranteed under the IDEA, § 504 or both, and at least some relief was available through the IDEA's procedures and remedies.  In contrast, the gravamen of the plaintiff's claim in *Witte* was not educational injury or ongoing emotional trauma which could be measured by the cost

of future remedial services, but was past physical injury.  Furthermore, to the extent the plaintiff in *Witte* had suffered any educational injuries, the parties had exhausted the remedies available under the IDEA to their mutual satisfaction.

While a very close issue, this court finds that Ruecker's claims premised on his 17-day suspension are subject to the exhaustion requirement.  Ruecker did not suffer any physical injury or verbal abuse as in *Witte*.  Instead, he seeks only money damages for injuries measured by damage to his reputation.  Any damages to his reputation are necessarily related to the fact and nature of his discipline which, in turn, are directly related to his educational injuries.  Other than its disciplinary nature, being relieved of the burden of attending classes for 17 days imposes no harm to a student's reputation.  With respect to his due process claims, the suspension caused injury to Ruecker's property and liberty interests in education.  Relief for the property interest would be measured by the damage to his education, for which the IDEA's administrative remedies could have provided some relief.  *See Jacobs v. Clark County Sch. Dist.*, 373 F Supp2d 1162, 1192-93 (D Nev 2005).  Relief for his liberty interest could be measured by the damage to his clean academic record.  *See id* at 1193.  This also could have been alleviated in part by the IDEA's administrative remedies.

In other words, the required proof of a constitutional injury due to a disciplinary suspension from school is necessarily made by showing injury to some educational interest.  *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 US 299, 310 (1986) (abstract value of a constitutional right may not form the basis of a § 1983 claim for damages absent proof of actual injury).  Ruecker's complaint about the length of his disciplinary suspension necessarily implicates acts with both an educational source and an adverse educational consequence.  *See Franklin v. Frid*, 7 F Supp2d 920, 925 (WD Mich 1998) ("[W]here the alleged acts constitute discipline and not random acts of violence, courts have generally held that claims based upon such conduct fall within the IDEA."

(citations omitted)); *Peterson v. Mt. Diablo Unified Sch. Dist.*, 2004 WL 2980746, *8 (ND Cal,

Dec. 20, 2004) (exhaustion required for § 1983 due process claim based on "various actions

including suspending [the student], placing him with a certain classroom aide and next to a certain

child in the classroom, refusing to provide him with services for a year, and promoting him from

year to year.").

 In sum, the administrative process could have provided generally the same remedies

Ruecker now seeks from this court.  Even if it could not have provided all the same remedies, it

would have been highly beneficial and directly served the policy supporting the exhaustion

requirement and the Congressional intent in providing the extensive administrative procedures

available under the IDEA.  Therefore, the nature of the injuries to be redressed did not excuse

Ruecker from first exhausting his administrative remedies.

### b.    <u>Graduation</u>

Ruecker also contends that resort to administrative remedies would have been futile due to

the fact that he had graduated by the time the administrative hearing was set.

Several courts have addressed the question of whether graduation from high school renders

the pursuit of administrative remedies futile with varying results.  In *Covington v. Knox County

Sch. System*, 205 F3d 912 (6th Cir 2000), the disabled student alleged that on several occasions he

was locked in an unventilated, unheated, unfurnished "time-out room" as discipline, and that on

several occasions, due to a lack of supervision and the length of his confinement, he had to relieve

himself on the concrete floor of the room.   Prior to his graduation, his mother filed an

administrative complaint, but due to the student's fault, the due process hearing was delayed until

after his graduation.  The court held that exhaustion was not required for his § 1983 claim and state

common law claims under "the unique circumstances of this case – in which the injured child has

already graduated from . . . school, his injuries are wholly in the past, and therefore money damages

are the only remedy that can make him whole." *Id* at 917.

Similarly, in *McCormick v. Waukegan Sch. Dist. No. 60*, 374 F3d 564 (7th Cir 2004), parents

of a student suffering from muscular dystrophy sued the school district because his physical

education teacher required him to engage in strenuous activity not permitted in his IEP, causing him

muscle and kidney damage from overexertion.  The court found that exhaustion would have been

futile because the IDEA did not provide remedies for physical, and not educational, injuries.  The

court concluded that the student's graduation from high school "alone does not affect our analysis

of the problem . . . [because it] does not necessarily eliminate the possibility of receiving benefits

under the IDEA." *Id* at 568 n1, citing *Frazier II*, 276 F3d at 63.  "Furthermore," the court

continued, "the need to exhaust should not depend upon the extent of delay in litigation or the

choice of a plaintiff to delay litigation until he or she graduates."  Rather exhaustion would not be

required where plaintiff's injuries could not "'be redressed to any degree by the IDEA's

administrative procedures and remedies.'" *Id* at 568, quoting *Padilla v. Sch. Dist. No. 1*, 233 F3d

1268, 1274-75 (10th Cir 2000).

*Frazier II,* 276 F3d 52, cited by *McCormick*, reached the opposite result using the same

rationale.  A disabled student alleged multiple claims for alleged violations of a variety of

constitutional and statutory rights arising from discipline for her misbehavior.  The district court

dismissed all claims for failure to exhaust administrative remedies.  On appeal, the court was not

persuaded by Frazier's argument that because she had already graduated, "the administrative

process [could] do nothing to ameliorate the bungling that marred her educational experience." *Id*

at 63.  The court noted that even after graduation, compensatory education was available.  It also

found that the timing was largely in her control since she could have invoked the IDEA's

procedural protections at several points in her high school years.  Finding an exception for graduated plaintiffs could "'encourage plaintiffs to wait to dispute the adequacy of their educational programs until after graduation precisely in the hope of recovering money damages.'"  *Id*, quoting *Frazier v. Fairhaven Sch. Comm.*, 122 F Supp2d 104, 111 (D Mass 2000) ("*Frazier I*").

The Second Circuit reached the same conclusion in *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F3d 478 (2nd Cir 2002).  In that case, a visually impaired student never filed an administrative grievance, but instead filed a lawsuit claiming violations of § 504, the ADA, and equal protection and due process clause violations pursuant to § 1983.  The court rejected Polera's arguments that exhaustion would be futile.  As in *Covington*, Polera had graduated from high school and complained of past conduct.  Unlike *Covington*, however, "a fully effective remedy was available at the time; she simply chose not to pursue it."  *Id* at 490.  The court was especially concerned that disabled-students "not be permitted to 'sit on' live claims and spurn the administrative process that could provide the educational services they seek, then later sue for damages."  *Id*.  This "would frustrate the IDEA's carefully crafted process for the prompt resolution of grievances through interaction between parents of disabled children and the agencies responsible for educating those children."  *Id*.

These cases, and others cited by defendants,[6] demonstrate that graduation does not render exhaustion futile.  Rather, the relevant question is whether the administrative process could have

---

[6] *Amidon v. Michigan*, 2008 WL 723536, *8 (ED Mich March 17, 2008) (plaintiff who chose to voluntarily drop out of school after bringing suit was required to exhaust administrative remedies for past injuries); *Allensworth-Cannaday v. Windham Exempted Village Sch. Dist.*, 2007 WL 3129818, *6 (ND Ohio Oct. 23, 2007) (exhaustion required despite imminent graduation where relief remained available and delay was attributable to plaintiff); *Oliver v. Dallas Indep. Sch. Dist.*, 2004 WL 1800878, *5-6 (ND Tex Aug. 11, 2004) (plaintiff's graduation held insufficient to establish futility where plaintiff failed to follow administrative process and waited until after she had graduated to bring suit).  *See also, Shaft v. Bullitt County Bd. of Educ.*, 2000 WL 33975581, *4 (WD Ky March 20, 2000) (student's imminent graduation did not excuse exhaustion where student sued prior to graduation and remedies were available under the IDEA even after graduation).  *But see, Hicks v. Purchase Line Sch. Dist.*, 251 F Supp2d 1250, 1253 (WD Pa 2003) (finding exhaustion requirement inapplicable where plaintiff had graduated from high school and only sought retrospective relief).

provided any remedy notwithstanding the plaintiff's graduation. In *Covington* and *McCormick*, the nature of the injuries were not educational, and the IDEA could not remedy the physical and emotional harm suffered. *Covington* reached this conclusion despite the fact that the excessive delay was the plaintiffs' fault. In contrast, in *Frazier II* and *Polera*, the plaintiffs' injuries were, in part, educational in nature, and both plaintiffs alleged that they were denied educational benefits. Because the IDEA's administrative processes could provided some measure of relief for their educational injuries, they were required to exhaust.

As in *Covington*, Ruecker seeks money damages, and some relief may not be available because he has graduated. Unlike the plaintiffs in *Frazier II* and *Polera*, Ruecker participated in some of the administrative process. Nevertheless, the focus of analysis is whether Ruecker seeks remedies that could have been provided through the administrative process. The fact that Ruecker has graduated or complied with most of the administrative process, while relevant, is not dispositive. As discussed above, a review of his claims shows that the relief he now seeks was available through the administrative process. As a result, it was not futile for Ruecker to exhaust the administrative processes available under the IDEA prior to bringing his claims even though he had graduated.

### 2.    **Lack of Notice**

Ruecker argues he is excused from completing the administrative process because the District failed to provide him with appropriate process and notice under the IDEA, 20 USC §§ 1415(k)(4) (manifestation determination) & 1415(k)(4)(A)(i) (notice of decision to discipline and all procedural safeguards). Ruecker also excuses his failure to exhaust because defendants failed to notify his parents that the January 27, 2005, meeting was an expulsion hearing.

As support for this argument Ruecker relies on *Gonzales*.  At issue in the portion of *Gonzales* cited by Ruecker was whether the IDEA's exhaustion requirement precluded a child's grandparents, who had not exhausted their procedural remedies, from bringing suit against the school district for what they alleged was an improper reduction in his schedule subject to the procedural protections of 20 USC § 1415 for a "change in program."  The court held that suit by his grandparents was not precluded based on two facts.  First, the school district initially denied that the reduction in the child's schedule was a "change in program" for which the IDEA provided procedural rights and remedies.  Second, the school district entirely failed to provide his grandparents with the notice required by 20 USC § 1415(b)(1)(D) (1982) [20 USC § 1415 (b)(3)(A)(2005)] which would have "fully inform[ed] them of all available safeguards and avenues of review."  *Gonzales*, 793 F2d at 1491.  "Under these circumstances, we will not penalize an aggrieved party."  *Id.*

Read in its proper context, *Gonzales* stands for the proposition that where a school district violates its statutory duty to provide notice to the plaintiff of his rights under the IDEA, which causes the plaintiff not to exhaust the IDEA administrative remedies, it cannot hide behind the exhaustion requirement as a defense to a lawsuit brought by the plaintiff.  Ruecker does not fall within this exception.  Even assuming defendants were obligated and failed to provide appropriate notice, Ruecker, unlike the plaintiffs in *Gonzales*, actually exercised his procedural rights under § 504 and the IDEA by filing a complaint requesting a due process hearing.

 Furthermore, Ruecker's failure to exhaust his administrative remedies had nothing to do with any lack of notice by the District.  This is not a case where the school district failed to notify the plaintiff of his rights and then seeks to penalize him for failing to exercise them.  Rather,

Ruecker was aware of his rights to administrative review, actually initiated administrative proceedings, and then voluntary withdrew his complaint for reasons not relevant to this exception. Additionally, the fact that Ruecker initially was represented by counsel weighs against applying this exception. *See Christopher W.*, 877 F2d at 1097 ("Since [plaintiff] had retained an attorney early on in this controversy . . . , we find lacking in persuasiveness any assertion of ignorance as to the appropriate procedures to be followed."). In fact, on March 28, 2006, the District actually notified Ruecker's counsel of the exhaustion requirement and of its intention to move to dismiss any claim brought pursuant to § 504 prior to fully exhausting the administrative remedies. *See id* at 1092-93 (noting similar circumstance). Any deficiency in defendants' notice of Ruecker's procedural rights does not excuse Ruecker's failure to exhaust his remedies in this case.

### 3.    Estoppel

Ruecker finally argues that defendants are estopped from asserting his failure to exhaust because they induced him to withdraw his complaint. Although not identified as a specific exception to the IDEA's exhaustion requirement, equitable estoppel has been recognized as providing an exception to the exhaustion requirement of several other federal statutes. *See Santa Maria v. Pac. Bell*, 202 F3d 1170, 1175-76 (9th Cir 2000) (Title VII); *Josephs v. Pac. Bell*, 443 F3d 1050, 1061 (9th Cir 2006) (ADA/Title VII). There does not appear to be any reason to deny its possible application in this case, and defendants have provided none.

When a party seeks equitable estoppel against a state agency, state law applies. *See Sawyer v. Sonoma County*, 719 F3d 1001, 1006 n11 (9th Cir 1983) ("This court has applied state law on the estoppel question when the party to be estopped is a state government or a subdivision thereof.") (citing cases). Under Oregon law, the elements of equitable estoppel are:

> [T]here must (1) be a false representation; (2) it must be made with
> knowledge of the facts; (3) the other party must have been ignorant of
> the truth; (4) it must have been made with the intention that it should
> be acted upon by the other party; (5) the other party must have been
> induced to act upon it[.]

*Welch v. Washington County*, 314 Or 707, 715-16, 842 P2d 793, 798 (1992), quoting *Coos County*

*v. State of Oregon*, 303 Or 173, 180-81, 734 P2d 1348, 1354 (1987) (brackets in original).

The misrepresentation at issue must be "one of existing material fact, and not of intention,

nor may it be a conclusion from facts or a conclusion of law." *Id*. "[T]o establish estoppel against

a state agency, a party must have relied on the agency's representations and the party's reliance

must have been reasonable." *State ex rel SOSCF v. Dennis*, 173 Or App 604, 611, 25 P3d 341, 347

(2001), citing *Dep't of Transp. v. Hewett Prof'l Group*, 321 Or 118, 126, 895 P2d 755, 760-61

(1995), *rev denied*, 332 Or 558, 34 P3d 1176 (2001).

In support of its estoppel argument, Ruecker points first to a communication from the

District's attorney to his attorney on March 28, 2006, stating that "the District . . . has worked

collaboratively to address the concerns raised in the tort claims notice, the OCR complaint and the

District appeal process, rendering the alleged damages and requested remedies in those proceedings

moot." Second, he points to the communication from the District's attorney in August 2006,

reiterating the District's position that his claims were moot and referring to the District's motion to

dismiss which was sent shortly thereafter. At the time of this second communication, Ruecker was

no longer represented by counsel. Ruecker maintains that he voluntarily withdrew his complaint

before the completion of the administrative process in reliance on these representations that his

claim was moot because the District had already offered all the remedies he sought in the

administrative process.

Ruecker's arguments are not well taken.  To begin with, the factual basis of this argument is

weak.  At his deposition, Mr. Ruecker testified as follows:

> Q:  What happened to the complaint that was filed with the State Department
> of Education?
> A:  We withdrew.
> Q:  And why?
> A:  Because it did not appear that that procedure – or that process was going
> to be able to provide a realistic remedy.

R. Ruecker Depo., p. 10.

After additional questioning, Mr. Ruecker clarified why he thought the remedy was

inadequate:

> A:  I did not believe – that we were obligated to complete the process as part
> of a – of a progression of events that may lead to the filing of a federal
> lawsuit.  And because I didn't think that it was required and because it didn't
> appear that the State Department of Education's hearing process could result
> in an award of attorney fees, in part, was the two primary reasons why we
> withdrew.
> Q:  Other than an award of attorney's fees, were you seeking any other
> specific monetary remedy in that proceeding?
> A:  I didn't think we could.
> Q:  And what other relief, non-monetary relief, were you seeking in that
> proceeding?
> A:  Non monetary.  Well, we believed and do believe that Curtis has suffered
> educationally as a result of the variety of experiences in the school district at
> Wilsonville.  And by the time we were going through that proceeding with
> the State, he was already graduated from high school and it didn't appear that
> there would be – well, we – you asked me what we were seeking.  Some sort
> of compensatory education was always a part of this – what we were
> interested in, and I didn't think they could do that either.
> Q:  What did you mean by "compensatory education"?
> A:  School district-funded educational opportunities to recover from his
> experiences at Wilsonville.

*Id* at 12-13.

Conspicuously absent from this exchange is any mention of Mr. Ruecker's reliance on the

District's communications in deciding to withdraw his son's complaint.

More importantly, Ruecker has failed to demonstrate that either of the District's assertions were misleading or concealed facts.  Ruecker has not explained how he could have been misled by the first communication made to his attorney nearly seven months prior to his decision to withdraw his complaint.  To hold that this communication could form the basis of an estoppel claim, in the absence of proof an affirmative misstatement or concealment of some material fact, would unnecessarily expose legal arguments made in the context of settlement negotiations to challenges based on later feelings of remorse.

The second communication and motion to dismiss are in this same vein.  They were legal arguments made without any showing of bad faith or lack of a proper legal foundation.  Plus, under Oregon law, "a conclusion of law," such as an opinion that a party's claim is moot, cannot be a misrepresentation justifying estoppel.  *Welch*, 314 Or at 716, 842 P2d at 798.  Had the District asserted that mootness relieved Ruecker of any need to further exhaust administrative remedies prior to bringing a lawsuit, a closer question would be presented.  However, it made no such assertion.  Legal argument, whether made in person or in a motion to dismiss, absent any fraud or misrepresentation of facts, cannot serve as an assertion of fact sufficient to warrant a finding of estoppel.

Support for this conclusion can be found by analogy to Title VII jurisprudence which contains an exception to the requirement of administrative exhaustion with the EEOC before filing a civil lawsuit if the claimant

> (1) diligently pursued his claim; (2) was misinformed or misled by the administrative agency responsible for processing his charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies; and (4) was acting *pro se* at the time.

*Josephs,* 443 F3d at 1061 (citation omitted).

In *Josephs*, the *pro se* plaintiff was misled by an EEOC representative that he needed to be represented by counsel prior to filing a claim.  This misrepresentation caused him to miss the filing deadline which had passed by the time he found representation.  The court held that the district court did not abuse its discretion in finding an equitable exception to the exhaustion requirement. *Id.*

Similarly, in *Albano v. Schering-Plough Corp.*, 912 F2d 384, 386-88 (9th Cir 1990), *cert denied*, 498 US 1085 (1991), a plaintiff failed to file a constructive discharge claim with the EEOC, along with his charge of failure to promote.  The EEOC refused to amend his claim upon his request and advised him, incorrectly, that the constructive discharge claim would be encompassed by his original charge.  The court did not bar him from bringing that claim in a later civil action.

In *Rodriguez v. Airborne Express*, 265 F3d 890, 900-02 (9th Cir 2001), the court held that a plaintiff who had failed to exhaust administrative remedies under the California Fair Employment and Housing Act ("FEHA"), had nonetheless created a triable issue of fact on the question of whether equitable estoppel excused his failure.  The plaintiff contended "that he failed to file a timely mental disability discrimination charge only because he was misled by the [California Department of Fair Employment and Housing] into believing that he could not pursue such a charge under FEHA, and that this fact should excuse his failure."  *Id* at 900

In each of those cases, as here, the plaintiff claimed that an alleged misrepresentation caused him to fail to comply with statutory exhaustion requirements.  In contrast to this case, the representations were false statements of law made to a *pro se* plaintiff by the administrative agency charged with processing their claim, not the party opposing it.  The District made only one

communication to Ruecker when he was *pro se* which, in essence, merely repeated the communication made while he was represented.  At best, Ruecker has presented scant evidence that he relied upon another party's legal argument in choosing to voluntarily withdraw his administrative complaint, in spite of the fact that the same party earlier warned him, through counsel, that it would move to dismiss any claims which he did not first exhaust.  Under these circumstances, there is no basis for finding that defendants are estopped from asserting a failure to exhaust defense.

      C.      **Conclusion**

The remedies available under the IDEA were designed to ameliorate just the sort of educational harm alleged by Ruecker's claims.  Ruecker's failure to exhaust his administrative remedies under the IDEA is not excused by his graduation or lack of notice and defendants are not estopped from relying on that failure.  As a result, all claims are dismissed for lack of subject matter jurisdiction.

**II.**      **Remaining Arguments**

Defendants also challenge the merits of Ruecker's Second Claim for denial of due process and his Third Claim for denial of equal protection based on a "class of one."  In addition, the individual defendants seek summary judgment based on qualified immunity.  Because this court lacks subject matter jurisdiction over these claims, it need not address these additional arguments.

**ORDER**

Defendants' Motion for Summary Judgment (docket #27) is GRANTED based on a lack of subject matter jurisdiction due to Ruecker's failure to exhaust his administrative remedies.

DATED this 6th day of June, 2008.

40 - OPINION AND ORDER

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge